**GIESE CONSTRUCTION COMPANY, INC., Appellant,**

v.

**August RANDA, Appellee.**

No. 93–1408.

Court of Appeals of Iowa.

Sept. 16, 1994.

Randall Nielsen and Rick L. Loftsgard of Pappajohn, Shriver, Eide & Nicholas, P.C., Mason City, for appellant.

Charles M. Biebesheimer and Thomas A. Lovell of Stillman, Goranson, Stone & Lovell, Clear Lake, for appellee.

Considered by DONIELSON, C.J., and SACKETT and HUITINK, JJ.

DONIELSON, Chief Judge.

The plaintiff/appellant, Giese Construction Company, Inc., ("Giese"), had contracted with the City of Clear Lake, Iowa, to complete a street paving project in the fall of 1990. The project required Giese to widen and lower the street located in front of the vacation home of the defendant/appellee Mr. August Randa. Due to the change in elevation of the street, the project rendered driveways on abutting properties unusable.

It was the responsibility of individual homeowners to arrange and pay for modification of their driveways to accommodate the new street width and elevation. The trial judge specifically found Randa's driveway was rendered "not usable" by completion of the street paving project.

Giese apparently entered into several oral contracts with some of the affected property owners for the construction of new driveways. Randa's driveway abutted that of his neighbor, Mr. Goldman. Giese's president, William H. Giese, testified he spoke with two men about replacing the Randa and Goldman driveways. Mr. Giese identified these two men as Mr. Goldman and an unidentified man who purportedly exited Randa's residence. Mr. Giese contends the men told him they would contact him later about replacing the driveways. A few days later Goldman contacted Mr. Giese and told him to replace both driveways. Giese Construction then proceeded to remove Randa's existing driveway, change the grade and install a new driveway with a broom finish.

Randa never personally authorized Giese to replace his driveway and was unaware Giese had done so until he visited the property in the spring of 1991. Randa was dissatisfied with the quality of work and finish used on the new driveway. Giese presented a $3,203.20 bill for the driveway replacement to Randa, but Randa never paid it. Randa claims Giese did not have any approval from him or any authorized agent to replace his driveway.

In July 1991 Giese filed a mechanic's lien against Randa's property for the work performed on the driveway. Giese subsequently filed a petition for foreclosure of its mechanic's lien or for alternative relief based on implied contract and quantum meruit. Randa filed an answer denying Giese's claims

and in a counterclaim sought judgment for an amount sufficient to remove the allegedly defective construction work and restore the property to the condition it was in prior to the work performed by Giese.

The case proceeded to trial on April 29, 1993. Randa presented expert evidence regarding the quality of work and finish performed by Giese. His expert testified the driveway finish did not meet the acceptable standards of work for cement contractors in the Clear Lake area, and the problem could only be rectified by removing and replacing the driveway at a cost of $4,887. William Giese testified the driveway finish was acceptable and a grinder could be used to smooth the driveway surface to Randa's satisfaction.

On August 10, 1993, the district court entered a ruling dismissing Giese's petition for foreclosure of its mechanic's lien. The court concluded Giese failed to prove there was a contract with Randa or his agent for the removal and paving of the driveway. The court found Giese could not recover under a theory of implied contract or quantum meruit because Randa was not aware of the project until it was completed, the driveway did not meet acceptable standards, and Randa was damaged as a result of its installation.

The court concluded Randa was entitled to recover on his counterclaim and entered judgment in his favor in the amount of $4,887. In reaching this conclusion the trial court determined "[t]he defective driveway must be replaced in order to properly restore Defendant's property to its prior condition."

Giese now appeals. It contends the trial court erred in not ruling in its favor on its mechanic's lien and quantum meruit claims and in finding Randa was entitled to recover $4,887 on its counterclaim.

## I. *Standard of Review and General Legal Principles*

An action to enforce a mechanic's lien is in equity and our review is de novo. Iowa Code § 572.26 (1993); *Sulzberger Excavating, Inc. v. Glass,* 351 N.W.2d 188, 191 (Iowa App.1984). Weight will be given to the findings of fact and credibility determinations of the trial court, especially in mechanic's lien cases. *See id.* at 191–92.

A mechanic's lien is purely statutory in nature. *Carson v. Roediger,* 513 N.W.2d 713, 715 (Iowa 1994). The mechanic's lien statute is liberally construed to promote restitution, the prevention of unjust enrichment and to assist parties in obtaining justice. *See id.*

## II. *Foreclosure of Mechanic's Lien*

Giese contends the trial court erred in failing to find it had proven an express contract for the foreclosure of its mechanic's lien. The burden of proof is upon the mechanic's lien claimant. *Sulzberger,* 351 N.W.2d at 192. Section 572.2 of the Iowa Code governs who is entitled to a mechanic's lien, and it requires the existence of a contract with the property owner or the owner's agent.

To be entitled to a mechanic's lien there must be an express contract or such a state of facts as will give rise to an implied contract. *Sulzberger,* 351 N.W.2d at 192. In attempting to enforce a mechanic's lien a meeting of the minds is essential to the existence of either an express or implied contract. *Harper v. Ford,* 179 N.W.2d 772, 774 (Iowa 1970).

"Fundamental to establishment of a mechanic's lien on property is proof of such an express or implied contractual arrangement binding the person then possessing an ownership interest." *Clemens Graf Droste Zu Vischering v. Kading,* 368 N.W.2d 702, 709 (Iowa 1985). On many occasions the Iowa Supreme Court has refused to enforce a mechanic's lien when the contractor has performed work pursuant to an express contract with someone other than the owner of the property. *See Clemens Graf Droste Zu Vischering,* 368 N.W.2d at 712; *Guldberg v. Greenfield,* 259 Iowa 873, 146 N.W.2d 298, 301 (1966); *Des Moines Sav. Bank v. Goode,* 106 Iowa 568, 573, 76 N.W. 825 (1898).

In its petition Giese plead the existence of an oral agreement between itself and Randa. The evidence in this case was uncontroverted that Giese had never had any direct contact with Randa about removing his

old driveway and replacing it with one accessible to the newly paved city street. Chapter 572 does permit enforcement of a mechanic's lien against an owner whose agent has made a contract with a contractor. *Clemens Graf Droste Zu Vischering*, 368 N.W.2d at 710. In order for Giese to establish the existence of a contractual relationship sufficient to support imposition of a mechanic's lien, it had to prove such a contract was made with an agent of Randa.

For an agency relationship to exist the principal must manifest to the agent that it may act on the principal's behalf and the agent must consent to so act. *Clemens Graf Droste Zu Vischering*, 368 N.W.2d at 710. For apparent authority to exist the principal must have acted in such a manner as to lead persons dealing with the agent to believe the agent has authority. *Id.* at 711. Apparent authority, as between the principal and third persons, must be determined by what the principal said and did rather than by the acts or statements of the purported agent. *See id.*

While Giese presumed the existence of an agency relationship in proceeding to replace Randa's driveway, the evidence was insufficient to prove it. Mr. Randa's two sons, two of his neighbors, and a caretaker of the property all had keys to his vacation home. The evidence at trial established the two sons and the caretaker did not have any discussions with Giese about the driveway project and could not have acted as agents authorizing Giese to proceed with the work. The two neighbors were not called as witnesses and there was no evidence indicating they had been authorized in any way to act as agents for Randa.

Giese asserts the conduct of the neighbor, Mr. Goldman, and the unidentified individual he believes exited the Randa home was such as to establish apparent authority. While the conduct of those individuals may have led Giese to believe the owner would have wanted the driveway replaced, it is the conduct of Randa which the court must look to in determining if he cloaked others with the apparent authority to act as his agents. Nothing in the evidence presented at trial supports a finding of apparent authority and the trial

judge was correct in finding no contract existed with either Randa or an agent.

### III. *Implied Contract/Quantum Meruit*

Giese contends the trial court erred in concluding it could not recover under the theory of implied contract or quantum meruit. "A quasi contract or contract implied in law rests upon the equitable principle that one shall not be permitted to unjustly enrich himself at the expense of another or to receive property or benefits without making compensation therefor." *Guldberg v. Greenfield*, 259 Iowa 873, 146 N.W.2d 298, 301 (1966). "Unjust enrichment" is the modern designation for the doctrine of quasi contracts or contracts implied in law. *Smith v. Stowell*, 256 Iowa 165, 125 N.W.2d 795, 799 (1964).

One who pleads an express oral contract cannot ordinarily recover under an implied contract or quantum meruit. *Guldberg*, 146 N.W.2d at 301. An express contract and an implied contract cannot coexist with respect to the same subject matter, and the law will not imply a contract where there is an express contract. *See Clemens Graf Droste Zu Vischering*, 368 N.W.2d at 712.

We concur with the trial court's conclusion that the circumstances of this case do not give rise to a contract implied in law. Not only did Giese plead the existence of an express contract which generally precludes recovery under an implied contract, but the equitable circumstances giving rise to unjust enrichment do not exist.

It was undisputed Randa was not aware Giese had replaced his driveway until long after the work had been completed. Randa resides in Des Moines and was not at his vacation home when Giese performed its work. This is not a case in which Randa stood by and allowed work to be performed without interjecting any objection to its completion. He did not allow himself to be unjustly benefited by Giese's mistake.

Giese opted to use very informal arrangements in making its business contracts and chose to rely on conversations with an unidentified individual and a neighbor to assume it had a contract to repave Randa's

driveway. Nothing in the record indicates Randa acquiesced to the work once performance had begun. Giese cannot expect to be compensated for its mistake of performing work which the homeowner never sought or authorized. "Nothing could more encourage carelessness than the acceptance of a principle that one who by mistake performs labor on the property of another should lose nothing by his error, but should have a claim on the owner for remuneration." 66 Am.Jur.2d *Restitution and Implied Contracts* § 27 (1973). While Randa may be enriched by Giese's work by virtue of the fact that he has a usable driveway, the circumstances of this case do not lead to the conclusion that he has been unjustly enriched and must be required to compensate Giese for the work.

### IV. *Randa's Counterclaim*

■ In his counterclaim Randa alleged Giese had trespassed upon his property and, without his authorization, replaced his existing driveway with a driveway of poor quality and workmanship. He sought judgment for a sum sufficient to remove the defective construction work and restore his property "to the condition it was prior to the work performed by [Giese]."

■ The purpose of a damage suit is compensation; the goal is to place the injured party in as favorable position as though no wrong had occurred. *R.E.T. Corp. v. Frank Paxton Co.*, 329 N.W.2d 416, 421 (Iowa 1983). Damages are limited to a party's actual loss. *Id.* "[N]o injured party should receive more than has been lost as a result of another's wrongdoing. Rather, damages are awarded to place the injured party in the same position as he would have been in had there been no injury." *Iowa Power and Light Co. v. Bd. of Water Works*, 281 N.W.2d 827, 832 (Iowa App.1979).

The trial judge specifically found Randa's driveway "was not usable after the street was paved due to the change in grade." That was the condition of Randa's driveway prior to the work performed by Giese. While the evidence may have shown the rough finish on the driveway constructed by Giese may not have met local standards, there was no evidence indicating it was not structurally sound or unusable as a driveway in conjunction with the newly paved street.

Literally requiring Giese to place Randa in the position he was in prior to performance of its work would require that Randa be restored to having an unusable driveway with a smooth finish. Randa is undoubtedly in a better position now with the driveway installed by Giese.

Giese Construction is not required to place Randa in a better situation than he was in following completion of the city's paving project, and the trial judge erred in ordering it to pay Randa for the cost of removing his driveway and replacing it with a usable driveway with a smooth finish. That portion of the trial court's ruling granting a $4,887 judgment with interest in favor of Randa is reversed. The costs of this action are assessed to the defendant/appellee.

**AFFIRMED IN PART, REVERSED IN PART.**